## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

FELMAN PRODUCTION INC., et al.,

        Plaintiffs,

v.                                 CIVIL  ACTION  NO.  3:06-0644

BORIS BANNAI, et al.,

        Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before this Court is the Motion to Dismiss of Counterclaim-Defendants, Plama Limited, Warren Steel Holdings, LLC, and Steel Rolling Holdings, LLC and Third-Party Defendants Igor Kolomoisky and Vadim Schulman [Doc. No. 125].  For the reasons below, this Court **GRANTS in part and DENIES in part** the motion.

In so considering this Motion, the Court **GRANTS** the Counterclaim-Defendants and Third-Party Defendants Motion for Leave to Exceed Page Limitation [Doc. No. 122]; the Court also **GRANTS** Defendants' Motion *Instanter* for Leave to File Memorandum in Opposition to Plaintiffs' Motion to Dismiss the Counterclaim and Third-Party Complaint, in Excess of Twenty Pages [Doc. No. 163]; and the Court **GRANTS** the Counterclaim-Defendants and Third-Party Defendants Motion for Leave to Exceed Page Limitation [Doc. No. 171].

### Facts

Plaintiffs Felman Production, Inc. ("Felman"), Bonham Business Corp., ("Bonham"), Warren Steel Holdings, LLC ("Warren Steel"), Steel Rolling Holdings, Inc. ("Steel Rolling"), Plama

Limited ("Plama"), and Stalmag sp. z.o.o. ("Stalmag") filed suit in the Southern District of West Virginia against Borris Bannai ("Bannai"), David Biniashvili ("Biniashvili"), American Steel & Alloys, LLC ("ASA"), and Moskotree Investments Ltd. ("Moskotree") on August 17, 2006 alleging various actions constituting a racketeering scheme.  Plaintiffs allege that there were four separate schemes, involving the Polish Plant, the New Haven, West Virginia Plant, the Warren Plant, and the Detroit facility.  Plaintiffs asserted sixteen counts against various parties.

On January 8, 2007, Defendants ASA and Bannai filed counterclaims against Plama, Warren Steel, and Steel Rolling and a Third-Party Complaint against Igor Kolomoisky ("Kolomoisky") and Vadim Schulman ("Schulman").  The Counterclaims and Third-Party Complaint include nineteen causes of action against the various parties.

On March 20, 2007, the Counterclaim Defendants and Third-Party Defendants filed a Motion to Dismiss pursuant to the Federal Rules of Civil Procedure 12(b)(6), 9(b), and 12(e).  Because this Motion at issue involves so many claims and the parties seek to dismiss varying portions of each claim, the Court will address each claim and basis for dismissal in turn.

**I.  Claims Against Kolomoisky and Schulman & Personal Jurisdiction**

The Third-Party Defendants, Kolomoisky and Schulman, argue that all claims against them should be dismissed for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).  They argue that there is no basis for the Court to find minimum contacts with the forum state for the purposes of either specific or general jurisdiction and that asserting jurisdiction over either party would not be reasonable.

When a non-resident defendant files a motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure challenging the court's power to exercise personal jurisdiction, "the jurisdictional

question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989).  When, as here, the court addresses the issue of jurisdiction "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Id.* at 676 (citations omitted). "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* at 676 (citations omitted).

To establish a prima facie case for personal jurisdiction, the Plaintiff must show (1) that a statute or rule authorizes service of process on the non-resident defendant; and (2) that service on the non-resident defendant comports with the requirements of the Due Process Clause.  *In re Celotex Corp.*, 124 F.3d 619, 627.  As West Virginia's long-arm statute extends to the full reach of due process, "it is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction."  *Id.* at 627-28. (citations omitted).  Instead, "the statutory inquiry necessarily merges with the Constitutional inquiry."  *Id.* at 628.  Thus, this Court's inquiry focuses on whether exercising personal jurisdiction over the defendant comports with due process.

Personal jurisdiction is consistent with the Due Process Clause if the Court determines Defendant has sufficient "minimum contacts" with West Virginia such that requiring it to defend its interest in West Virginia "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  The United States Supreme Court has explained that "minimum

contacts" must be "purposeful." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). The "'purposeful' requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend itself in a forum when the non-resident never purposefully availed itself of the privilege of conducting activities within the forum, thus never invoking the benefits and protections of its laws." *Celotex*, 124 F.3d at 628. In other words, a defendant cannot be "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or . . . [because] of the 'unilateral activity of another party or a third person." *Burger King Corp.,* 471 U.S. at 475 (citations omitted). This requirement "helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." *Celotex*, 124 F.3d at 628 (internal quotations and citations omitted).

In order to exercise specific jurisdiction, the cause of action must "arise[] out of the defendant's contact with the forum." *Saudi v. Northrop Grumman Corp.,* 427 F.3d 271, 276 (4th Cir. 2005) *citing Base Metal Trading v. OJSC "Novokuznetsky Aluminum Factory",* 283 F.3d 208, 213 (4th Cir. 2002). For general jurisdiction to exist, there must be "continuous and systematic" contacts with the forum state. *Id.* at 276 *quoting Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984).

**Kolomoisky**

Counter-Plaintiffs assert that this Court can exercise jurisdiction over Kolomoisky based upon his contact with the forum state. Counter-Plaintiffs allege that in 2003 Bannai and Kolomoisky began discussions regarding the sale of the West Virginia operations and that, in 2005, Kolomoisky bought the West Virginia plant from Bannai for $20 million. Counter-Plaintiffs assert that from these discussions, the parties began negotiations regarding the Ohio Plant and the Michigan Plant

and that without the initial conversations involving West Virginia, the subsequent agreements would not have taken place.  Counter-Plaintiffs argue that after the initial step of acquiring the West Virginia operations, Kolomoisky and Schulman proceeded to defraud Bannai with promises of joint participation in an effort to usurp the joint venture for themselves.  The Third-Party Complaint asserts numerous causes of action against Kolomoisky, most of which refer to the Ohio Facility or the Michigan Agreement - but not to the West Virginia facility or the West Virginia agreement.  The only claim that does not refer to either the Ohio Facility or Agreement or the Michigan Facility or Agreement in the title or in the text of the claim is a claim for injunctive relief (Count XI)[1] that is based upon the general actions of, *inter alia,* Kolomoisky.  The only indication from Counter-Plaintiffs that the claims and the contacts with West Virginia coincide is that "Kolomoisky and Schulman intended the West Virginia facility that Kolomoisky purchased from Bannai to be part of their overarching enterprise."  Defs. Mem. In Opposition to Pls' Mot. To Dimiss the Counterclaim and Third-Party Complaint, p. 2.  The claims, however, are not based on anti-trust or RICO, but rather on common law claims such as breach of contract, tortious interference with business relations, replevin, and unjust enrichment.  Thus the contact alleged does not relate to the claim at hand.

Since the claims alleged do not relate to the West Virginia facility, it is difficult to see how the Court could constitutionally exercise specific jurisdiction over Kolomoisky.  That the Ohio and Michigan Agreements would not have come about but for the initial conversations about the West Virginia Plant is too attenuated to be the basis for conferring specific jurisdiction.  Therefore, in

---

[1]As the Court will explain, the claim for injunctive relief is not a viable cause of action, but rather a form of relief.

order for this Court to exercise jurisdiction over Kolomoisky, his contact must be continuous and systematic so as to put him on notice that he may be subject to general jurisdiction in West Virginia.

Pursuant to the agreement alleged by the Third-Party Complaint, Kolomoisky bought, and therefore owned, the West Virginia ore facility.  He also was affiliated with several companies, including Stalmag, Felman, Warren, and Plama.  Of those, Felman has its principal place of business in New Haven, West Virginia.  And, all four companies with whom Kolomoisky is affiliated filed the original suit in this action in the Southern District of West Virginia.  However, "the contacts of a company are not attributed to a corporate agent for jurisdictional purposes."  *ePlus Technology, Inc., v. Aboud*, 313 F.3d 166, 177 (4ᵗʰ Cir. 2002) *citing Calder v. Jones,* 465 U.S. 783, 790 (1984).  Kolomoisky's connections with West Virginia therefore must be based on his own individual minimum contacts with the state; the Third-Party Complaint fails to assert a basis of minimum contacts based on which Kolomoisky would be subject to jurisdiction in West Virginia.  His contacts are not continuous and systematic; he entered into one contract to purchase the iron ore plant.  The causes of action against him do not arise out of his contact with the state, despite the Counter-Plaintiffs' contention that the negotiations for Ohio and Michigan would not have taken place were it not for the initial contact regarding West Virginia.  The Court therefore cannot exercise personal jurisdiction over Kolomoisky and his Motion to Dismiss for lack of personal jurisdiction is **GRANTED**.

**Schulman**

The Counter-Plaintiffs' claims against Schulman for the purposes of jurisdiction are more tenuous than the claims regarding Kolomoisky.  Plaintiffs assert that Schulman is connected to West Virginia because he and Kolomoisky involved Bannai in discussions regarding a vertically-

integrated ferroalloy joint venture that began in West Virginia. Counter-Plaintiffs also claim that West Virginia can assert jurisdiction because Kolomoisky's jurisdictional contacts may be imputed to Schulman. Since this Court found above that Kolomoisky does not have sufficient jurisdictional contacts, the conspiracy theory of jurisdiction is inapplicable here. The sole remaining basis for asserting jurisdiction over Schulman is in relation to his discussions with Bannai. These alleged conversations, however, did not take place in West Virginia. To the extent that the discussions referred to West Virginia, any reference may have been to the New Haven, West Virginia plant which Kolomoisky purchased. However, even Counter-Plaintiffs admit that Schulman was not involved in that purchase. Thus, there are insufficient minimum contacts for this Court to assert jurisdiction over Schulman without offending the traditional notions of fair play and substantial justice. Schulman's Motion to Dismiss for lack of personal jurisdiction is **GRANTED.**

## II. Individual Claims - Failure to State a Claim

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the United States Supreme Court recently disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957), which has long been used to evaluate complaints subject to 12(b)(6) motions. *Twombly*, 127 S. Ct. at 1969. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 1965 (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic

deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 1966 (internal quotation marks and citations omitted). Two weeks after issuing its decision in *Twombly*, the Court emphasized in *Erickson v. Pardus*, 127 S. Ct. 2197 (2007), that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" 127 S. Ct. at 2200 (quoting *Twombly*, 127 S. Ct. at 1964 (other citations and some internal quotations omitted). Thus, "a universal standard of heightened fact pleading" is not required, rather it is "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143,157-58 (2d Cir. 2007) (italics original). It is under this revised standard that the Court must now evaluate Counter-Plaintiff's Complaint in light of Counter-Defendant's and Third Party Defendant's 12(b)(6) motion.

The Court notes that under each claim, the Counterclaim-Defendants and Third-Party Defendants asserted that the Counter-Plaintiffs did not establish each element of each claim and that the failure to assert each element constitutes a failure to state a claim. Based upon the above standards established by the United States Supreme Court, the Counter-Plaintiffs were required only to plead a plausible claim, not every element of every cause of action.

The Court also notes that it is unnecessary to discuss the Counter-Defendants assertions of failure to state a claim to the extent that they are directed at Kolomoisky and Schulman because of the Court's finding that there is no personal jurisdiction over them. Therefore, the Court will focus on the remaining arguments with respect to the Motion to Dismiss.

**ASA's Claims (Counts I, II, III)**

In their Motion to Dismiss, Counterclaim Defendants assert that ASA 1)  Failed to State a Claim for Breach of Contract against Kolomoisky, Schulman, Warren, and Plama (Count I); 2) Failed to State a Claim for Breach of Implied Contract Against Kolomoisky, Schulman, Warren, and Plama (Count II); and 3) Failed to State a Claim for Breach of Promissory Estoppel Against Kolomoisky, Schulman, Warren, and Plama (Count III).  All three assertions are based on the notion that ASA was not party to the original Ohio Agreement.

The Counterclaim and Third Party Complaint ("CTPC") assert in Counts I, II, and III that Bannai contracted with Kolomoisky, Schulman, Warren Steel, and Plama and that, as a result of the Counterclaim Defendants' actions, ASA and Bannai were harmed.  Prior to asserting the individual causes of action, the CTPC states that ASA was formed so that Bannai could accomplish his duties and responsibilities under the Ohio Agreement.  Thus, Bannai operated the Ohio facility through ASA and the CTPC sufficiently alleges contractual duties owed to it.  Based on the assertions in the CTPC, Counter-Plaintiffs have established a "plausible" claim for breach of contract, breach of implied contract, and breach of promissory estoppel and the Motion with respect to Count I, Count II, and Count III is **DENIED**.

**Conversion Claim (Count IV)**

Counter-Defendants assert that Bannai failed to state claims for conversion against Kolomoisky, Schulman, Warren, and Plama because Bannai does not allege that he owns the Water Treatment Facility and because the parties do not state claims against Kolomoisky or Schulman. The CTPC does assert, however, that Warren, Plama, Kolomoisky, and Schulman wrongfully converted the water treatment facility that was "obtained for use" at the Ohio facility, in which

Bannai and ASA had an interest. Although the CTPC does not clearly state that Bannai or ASA owned the facility itself, it does assert that the Ohio facility was using the water treatment facility and that the Counter-Defendants failed to gain permission to utilize said water treatment facility. Again, these assertions amount to a plausible claim and the Motion with respect to Count IV is **DENIED.**

### **Tortious Interference with Business Relationships Claim (Count V)**

Counter-Defendants' Motion to Dismiss asserts that either the claim for Tortious Interference with Business Relationships should be dismissed for failure to state a claim or that Bannai and ASA should be required to make a more definite statement.

Counter-Defendants seek to dismiss the claim  because ASA and Bannai do not plead "(1) the identity of the third parties or employees of ASA with whom Movants allegedly interfered; (2) the business relationships, if any, which existed at the time of the alleged interference; or (3) the potential business relationships, if any, with which Movants allegedly interfered."  The core allegations meet, and need not go beyond, what is initially necessary to assert a cause of action.  The CTPC asserts that Bannai and ASA had expectancy interests in ASA employees from which they anticipated financial gain and that the opposing parties interfered, inappropriately and without authorization, with those interests so that Bannai and ASA were damaged by the wrongful conduct. This is sufficient information and asserts a plausible claim.  The Motion to Dismiss with respect to Count V is therefore **DENIED.**

Counter-Defendants alternatively assert that this cause of action should be pleaded with more particularity under Federal Rule of Civil Procedure Rule 12(e).  Rule 12(e) states that if a pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading,

the party may move for a more definite statement." Here, the CTPC asserts sufficient information based on which the Counter-Defendants could form a responsive pleading. For that reason, the Motion for a More Definite Statement with respect to Count V is **DENIED.**

### Constructive Trust (Count VI)

In addition to arguing for dismissal of the claim as to Kolomoisky and Schulman, the Counter-Defendants claim that ASA lacks standing to plead a claim against Warren and Plama because ASA was not a party to the Ohio Agreement. In its claim for a constructive trust, the CTPC asserts: "As a result of Counter-Defendants and Third-Party Defendants' wrongful conduct, the profits from the Ohio Facility's operation should be held in constructive trust for Counter-Plaintiffs/Third-Party Plaintiffs' benefit to avoid unjust enrichment." As mentioned above, ASA was created so that Bannai could accomplish his duties and responsibilities under the Ohio Agreement. Therefore, though not an original party to the Ohio Agreement, ASA had a role in the execution of the agreement and could be harmed by the wrongful conduct alleged. Since Counter-Defendants do not make it clear why it is that ASA lacks standing with respect to this Count, the Court finds that the claim is sufficient and Motion to Dismiss Count VI is **DENIED.**

### Restitution/Unjust Enrichment (Count VII)

Aside from Counter-Defendants claim that Bannai fails to state a claim with respect to Kolomoisky and Schulman, they assert that Bannai's claim for 50% of the profits from the operation of the Ohio facility does not comport with the purposes of granting restitution. Regardless of whether Bannai's claim for restitution is warranted or not, the Court fails to see how the amount of restitution desired indicates a failure to state a claim. The merits of each of the claims should be

addressed in further proceedings, not within a Motion to Dismiss such as the one at issue.  The Court

therefore **DENIES** the Motion to Dismiss Count VII.

### Usurpation of Business Opportunities (Count VIII)

Counter-Defendants assert that ASA and Bannai do not state a claim based upon the fact that

a company cannot usurp its own business opportunities and that the CTPC does not allege that the

Counter-Defendants were directors or officers of ASA.  Counter-Plaintiffs make clear that the

usurpation was not the company usurping its own business opportunities but the Counter-Defendants

usurping the opportunities of the joint venture.  The claim need not explain each element of the

cause of action to survive the Motion to Dismiss and what Counter-Plaintiffs allege establishes a

plausible claim.  For these reasons, the Court **DENIES** the Motion to Dismiss with respect to Count

VIII.

### ASA - Intentional Misrepresentation (Count IX)

Among other objections, the Counter-Defendants assert that ASA's allegations with respect

to Intentional Misrepresentation do not meet the standard of Federal Rules of Civil Procedure 9(b).

Federal Rule of Civil Procedure 9(b) specifies,

> In all averments of fraud or mistake, the circumstances constituting
> fraud or mistake shall be stated with particularity. Malice, intent,
> knowledge, and other condition of mind of a person may be averred
> generally.

Fed. R. Civ. Pro. 9(b).  The "'circumstances' required to be pled with particularity under Rule 9(b)

are 'the time, place, and contents of the false representations, as well as the identity of the person

making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah*

*River Co.,* 176 F.3d 776, 784 (4th Cir. 1999) *quoting* 5 Charles Alan Wright and Arthur R. Miller,

*Federal Practice and Procedure: Civil* § 1297 at 590 (2d ed. 1990).  "The second sentence of Rule

9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." *Harrison*, 176 F.3d at 784.

As the Fourth Circuit noted, Rule 9(b) has four purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of.... Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison,* 176 F.3d at 784 *quoting United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F.Supp. 1055, 1056-57 (S.D. Ga. 1990). Therefore, the Court should not dismiss a complaint or cause of action under Rule 9(b) if "the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial" and the "plaintiff has substantial prediscovery evidence of those facts." *Harrison,* 176 F.3d at 784.

Thus, the Counter-Plaintiffs must have been clear about the time, place, contents, and identity of the person making the misrepresentation, and specify what the party obtained based on the misrepresentation. The CTPC states that the Counter-Defendants made the misrepresentations in the Ohio Agreement - namely, that the Counter-Plaintiffs would have a 50% ownership interest in Warren Steel and Plama, that the Counter-Defendants would contribute to the capital required to fund start-up of the Ohio facility, and that the Counter-Defendants would reimburse the Counter-Plaintiffs all the funds they contributed to the start up costs at the Ohio Facility. The time frame therefore surrounds the formation of the Ohio Agreement and the contents of the agreement. The parties making the alleged misrepresentations are the Counter-Defendants. And Counter-Plaintiffs assert what the Counter-Defendants attempted to gain: "to seize control of the Ohio Facility and

exclude Counter Plaintiffs/Third-Party Plaintiffs from any ownership interest or operational control." Clearly this is sufficient information from which the Counter-Defendants could formulate a defense. The information satisfies the Rule 9(b) requirements for particularity with respect to a claim of fraud.

In addition, the Counter-Defendants argue that ASA failed to allege that any representations were made to it, in particular, since it was not a party to the original contract.  However, as with Counts I, II, and III, above, ASA was created to satisfy Bannai's obligations to operate the facility under the agreement, and therefore any misrepresentation inherently applies to it.  There is a plausible claim, based on the allegations and assertions in the CTPC.

The Motion to Dismiss Count IX is **DENIED.**  The Counter-Defendants do not assert the same with respect to Bannai, so this Court will not rule on such an objection.

### Replevin (Count X)

Regarding Count X for replevin, the only remaining argument for dismissal of the claim for replevin is that Bannai lacks standing because he does not allege that he owns the Water Treatment Facility.  Indeed, the CTPC does not refer to Bannai or his ownership or role with respect to this particular count, though it does specify ASA's involvement and claim for relief.  Since it is not clear that Bannai is involved in asserting this claim, the claim is not plausible as to Bannai.  Certainly the claim must remain with respect to ASA, but as to Bannai's claim for replevin, the Motion is **GRANTED.**

### Injunctive Relief (Count XI)

Both parties concede that there is not a cause of action for injunctive relief.  Although Counter-Plaintiffs may be entitled to this relief, it should not be considered a separate cause of

-14-

action. Therefore, as to the cause of action for injunctive relief, the Motion to Dismiss Count XI is **GRANTED.**

### Implied Contractual Indemnity & Common Law Indemnity (Counts XVIII and XIX)

Because both of these causes of action are directed only at Kolomoisky and Schulman and the Court has already determined that there is no personal jurisdiction over them, the Motion to Dismiss Counts XVIII and XIX is **GRANTED.**

### Breach of Contract (XII)

Counter-Defendants argue that the breach of contract claim against Steel Rolling should be dismissed because Steel Rolling was not a party to the Michigan Agreement.  However, as Counter-Plaintiffs stated, the CTPC does allege that Steel Rolling was involved in the agreement.  The allegation is certainly plausible to state a claim, and the Motion to Dismiss Count XII is **DENIED.**

### Breach of Implied Contract (Count XIII)

Counter-Defendants assert that the breach of implied contract claim against Steel Rolling because Steel Rolling was not formed until May 21, 2006 and was not a party to the Michigan Agreement.  As with the Count XII, it is clear that the Counter-Plaintiffs allege that Steel Rolling is a party to the Michigan Agreement.  For the same reasons as the breach of contract count, the Court **DENIES** the Motion to Dismiss Count XIII.

### Promissory Estoppel (Count XIV)

Counter-Defendants move to dismiss the claim for promissory estoppel because the CTPC does not allege that Steel Rolling made any promises to Bannai or ASA.  The Complaint does not refer to any role of Steel Rolling except to state that Steel Rolling could and did reasonably foresee that its failure to perform the Michigan Agreement would cause Bannai to suffer damages.  In

-15-

reference to the actual promises made, however, there are no allegations that Steel Rolling made any based on which promissory estoppel would be a viable claim.  Therefore, the Motion to Dismiss Count XIV is **GRANTED.**

### Constructive Trust (Count XV)

Counter-Defendants argue that the Court should dismiss the cause of action for constructive trust because there are no allegations of fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities.  As Counter-Plaintiffs point out, there are certainly allegations in the CTPC that constitute claims of misrepresentation and therefore make the cause of action plausible.  The Motion to Dismiss Count XV is therefore **DENIED.**

### Restitution/Unjust Enrichment (Count XVI)

With respect to the claim for Restitution/Unjust Enrichment, Counter-Defendants argue that because Steel Rolling was not a party to the Michigan Agreement.  Counter-Plaintiffs allege, however, that Steel Rolling "was a participant in the Michigan Agreement."  This indicates that Counter-Plaintiffs have a plausible argument sufficient to survive a Motion to Dismiss.  Therefore, the Motion to Dismiss Count XVI is **DENIED.**

### Usurpation of Business Opportunities (Count XVII)

Counter-Defendants argue that Bannai fails to state a claim with respect to Count XVII because Steel Rolling cannot owe itself a fiduciary duty nor usurp its own business opportunity.  In addition, Counter-Defendants assert that because Steel Rolling is not a party to the Michigan Agreement, it cannot owe a fiduciary duty to Bannai.  Counter-Plaintiffs, however, respond that as participants in a joint venture, Steel Rolling owed a fiduciary duty and that as a member of a joint venture, they could not usurp the business opportunities of the joint venture. Because Counter-

Plaintiffs allege sufficient facts to constitute a claim for usurpation of business opportunities, the Motion to Dismiss Count XVII is **DENIED.**

## CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part** the Motion to Dismiss of Counterclaim-Defendants, Plama Limited, Warren Steel Rolling, LLC, and Steel Rolling Holdings, LLC and Third-Party Defendants Igor Kolomoisky and Vadim Schulman. Specifically, the Court **GRANTS** the Motion to the extent it is based on lack of jurisdiction over Kolomoisky and Schulman and with respect to failure to state a claim for Count X, Replevin, with respect to Bannai (but not ASA); Count XI, Injunctive Relief; Count XVIII, Implied Contractual Indemnity; Count XIX, Common Law Indemnity; and Count XIV, Promissory Estoppel and **DENIES** the Motion with respect to the remainder of the Motion.

The Court **DIRECTS** the Clerk to send a copy of this written Order and Opinion to counsel of record and any unrepresented parties.

ENTER:       November 1, 2007

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE